# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, as subrogee of Raegan Wood, | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:25-cv-959 |
| | § | Judge Mazzant |
| RYOBI AMERICA CORPORATION and TECHTRONIC INDUSTRIES NORTH AMERICA INC., | § § § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Techtronic Industries North America, Inc.'s Motion to Dismiss (Dkt. #15) and Techtronic Industries North America, Inc.'s Partial Motion to Dismiss (Dkt. #22). Having considered the motions and the relevant pleadings, the Court finds that:

- Techtronic Industries North America, Inc.'s Motion to Dismiss (Dkt. #15) should be **GRANTED**.

- Techtronic Industries North America, Inc.'s Partial Motion to Dismiss (Dkt. #22) should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This property damage case arises from a fire caused by allegedly defective batteries. On August 18, 2023, a fire caused extensive damage to the property of Raegan Wood ("Wood") (Dkt. #11). Wood submitted a claim under his insurance policy with Plaintiff American Insurance Company ("Plaintiff") (Dkt. #11 at p. 2). Plaintiff paid insurance proceeds to or on behalf of Wood pursuant to the applicable insurance policy (Dkt. #11 at p. 5). Plaintiff argues that Defendants Ryobi

America Corporation ("Ryobi") and Techtronic Industries North America Inc. ("Defendant")[1] are responsible for the fire, entitling Plaintiff to subrogate the insurance benefits paid to Wood and to collect any deductible paid by Wood (Dkt. #11 at pp. 5–8). Specifically, Plaintiff alleges that Defendant made and sold a defective battery or otherwise placed it in the stream of commerce (Dkt. #11 at pp. 5–8). Plaintiff's theory is that Defendant's batteries started a fire when Wood left them on his kitchen countertop (Dkt. #11 at p. 5).

On July 15, 2025, Plaintiff filed its original petition in Texas state court (Dkt. #3). On September 2, 2025, Defendant removed the case to this Court (Dkt. #1). Defendant then moved to dismiss the complaint, but the Court denied the motion as moot when Plaintiff filed its first amended complaint (the "Complaint") (Dkt. #4; Dkt. #11; Dkt. #12). The Complaint asserts claims for manufacturing defect, negligence, and breach of the implied warranty of merchantability (Dkt. #11 at pp. 5–8). On September 25, 2025, Wood filed an unopposed motion to intervene alongside an intervenor complaint, and the Court granted the motion on October 28, 2025 (Dkt. #8; Dkt. #10; Dkt. #13; Dkt. #19). Wood's operative complaint ("Intervenor Complaint") alleges that some of his losses were not covered by the insurance policy with Plaintiff, and he seeks recovery for those losses, asserting theories of defective manufacturing, negligence, and breach of implied warranty of merchantability (Dkt. #19).

On October 30, 2025, Defendant moved to dismiss once more (Dkt. #15). Through that motion, Defendant challenges the plausibility of Plaintiff's manufacturing defect and negligence

---

[1]   The Court does not include Ryobi in its discussion because it dissolved in 2001 and is no longer in existence (Dkt. #1 at p. 3; Dkt. #1-3).

claims. Plaintiff had fourteen days to respond but did not do so. LOCAL RULE CV-7(e). Nor has Plaintiff requested any extension.

On December 15, 2025, Defendant moved to dismiss the Intervenor Complaint (Dkt. #22). Through this motion, Defendant also challenges the plausibility of Wood's manufacturing defect and negligence claims, as well as the viability of Wood's request for expert and adjuster fees. Wood had two weeks to respond but did not do so. LOCAL RULE CV-7(e). Wood also failed to request any extension. As such, both motions are ripe for adjudication.

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen,* 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id*. "This standard 'simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co*., LLC, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

Defendant's arguments primarily challenge the plausibility of the claims asserted in Plaintiff and Wood's complaints. Texas law governs the substantive issues necessary to resolve the motions because the Court has diversity jurisdiction over the case. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). After considering Defendant's arguments and the relevant pleadings, the Court finds that the motion to dismiss Plaintiff's complaint should be granted, while the motion to dismiss Wood's intervenor complaint should be granted in part and denied in part.

## I.       Defendant's Motion to Dismiss Plaintiff's Complaint

Defendant moves to dismiss Plaintiff's tort claims but does not challenge Plaintiff's claim for breach of implied warranty of merchantability. The Court considers each challenge below, and dismisses Plaintiff's tort claims.

*Manufacturing Defect*. "[A] touchstone of a manufacturing defect claim is proof that the allegedly defective product differs from other products in the same product line." *Casey v. Toyota Motor Eng'g & Mfg. N. Am., Inc.*, 770 F.3d 322, 329 (5th Cir. 2014). Although "proof" is not an issue at the pleading stage, Defendant argues that the manufacturing defect claim mut be dismissed because Plaintiff fails to allege that the battery deviated from Defendant's planned output. The Complaint makes the following pertinent to the manufacturing defect claim:

> Defendants developed, designed, manufactured, assembled, tested, marketed, distributed, sold, and otherwise placed the subject products into the stream of commerce.

> When placed in the stream of commerce by Defendants, the subject products contained one or more manufacturing defects which rendered them unreasonably dangerous.

> Plaintiff's insured and the Property were reasonably and foreseeably expected to be affected by use of the subject products.

> The subject products were defective in their manufacture; and, because of the defect(s), the subject products were unreasonably dangerous to Plaintiff's insured and the Property.

> The subject products were defective at the time they left Defendants' custody and control.

> The subject products were expected to, and did, reach the end user without substantial change in the condition in which they were sold.

> Properly manufactured, factory-sealed batteries do not ordinarily explode absent some sort of manufacturing defect.

> As a direct and proximate result of the manufacturing defects in the subject products, while sitting on a countertop they catastrophically failed and caused an explosion and fire at the Property.
>
> As a direct and proximate result of the catastrophic failure of the subject products, for which Defendants are strictly liable, Plaintiff incurred damages in amounts to be proven at the time of trial.

(Dkt. #11 at pp. 6–7).

Plaintiff's use of the phrase "some sort of manufacturing defect" and the absence of more particular allegations persuade the Court that Plaintiff failed to plead a specific manufacturing defect. Therefore, the question is whether a plaintiff can survive Rule 12(b)(6) dismissal by alleging that a product contained "one or more manufacturing defects" and that the type of product at issue does not malfunction "absent some sort of manufacturing defect." The answer is no.

In a case applying Texas law, the Fifth Circuit held that "[t]o allege a manufacturing defect, a plaintiff must plead that a 'product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous.'" *Harrison v. Medtronic, Inc.*, No. 22-10201, 2022 WL 17443711, at *2 (5th Cir. Dec. 6, 2022) (per curiam) (unpublished) (quoting *Casey*, 770 F.3d at 326). In that case, the plaintiff "concede[d] he failed to allege a specific manufacturing defect." *Id.* Like Plaintiff in this case, the plaintiff in *Harrison* did not "identify[] anything specific or even alleg[ed] the device deviated from [the defendant's] specifications." *Id.* Similarly, the plaintiff in *Harrison* attempted to invoke "*res ipsa loquitur* ('the thing speaks for itself')," which is "an evidentiary rule that allows a factfinder to infer a defendant's negligence from the circumstances surrounding the accident." *Id.* (citation modified).

The Fifth Circuit affirmed the dismissal of his claim. *Id.* It held that the plaintiff pleaded nothing more than the mere possibility of misconduct. *Id.* As to *res ipsa loquitur*, the Fifth Circuit rejected the argument, reasoning that "merely relying on *res ipsa loquitur* is not a valid substitute

for shouldering the burden of *specifying* a manufacturing defect." *Id*. (citation modified) (emphasis added). "That is because Texas law does not generally recognize a product failure or malfunction, standing alone, as sufficient proof of a product defect." *Id*. (citation modified).

Here, like the plaintiff in *Harrison*, Plaintiff failed to identify a specific manufacturing defect and cannot rely on *res ipsa loquitur* to avoid shouldering that burden.[2] Dismissal of Plaintiff's defective manufacturing claim is therefore required.

***Negligence***. In *Harrison*, the Fifth Circuit explained that, despite the differences between negligence and products liability claims, "a negligence claim [based on the unreasonably dangerous nature of a product] still presupposes a 'defective' product."[3] *Harrison*, 2022 WL 17443711, at *2. Therefore, *Harrison*'s "conclusion with respect to the [plaintiff's] strict liability claims" controlled the "disposition of the [plaintiff's] negligence claims." *Id*. at *2 n.1; *see also Garrett v. Hamilton Standard Controls, Inc.*, 850 F.2d 253, 257–58 (5th Cir. 1988) (applying Texas law, and concluding that, at least in cases asserting a negligent manufacturing theory without identifying other negligent

---

[2] Furthermore, without a response, the Court has no basis to assume that Plaintiff has been unable to identify a specific defect because of a lack of discovery. Under the Local Rules, discovery is not paused just because a party files a dispositive motion. LOCAL RULE CV-26(a). If Plaintiff expected discovery to enable it to amend its complaint or respond to the motion to dismiss, it should have moved for an extension of time to respond. *Cf. Albaugh v. Wind Access Eng'g, Inc.,* No. 1:23-CV-00146, 2025 WL 1699195, at *7 (S.D. Tex. May 16, 2025) (rejecting the plaintiff's argument that he could not identify a specific manufacturing defect without discovery because the record did not show a lack of "opportunity to conduct discovery and to amend his pleadings as necessary."), *report and recommendation adopted*, No. 1:23-CV-146, 2025 WL 1682890 (S.D. Tex. June 16, 2025), *aff'd*, No. 25-40434, 2026 WL 637724 (5th Cir. Mar. 6, 2026).

[3] As set forth in *Harrison*, a strict products liability claim requires "(1) a defective product that (2) was unreasonably dangerous, (3) did not substantially change from its original condition when it reached the consumer, and (4) caused the plaintiff's injuries." *Harrison*, 2022 WL 17443711, at *2. Meanwhile, "a claim of negligent products liability requires only that we look at the act of the manufacturer and determine if it exercised ordinary care." *Id*. at *2 n.1. Here, Plaintiff's negligence claim turns on the unreasonably dangerous nature of the product and does not allege any separate basis for negligence (*See* Dkt. #11 at p. 6 ("Defendants were negligent in failing to exercise reasonable care to prevent the subject products from creating an unreasonable risk of harm to Plaintiff's insureds . . . .").

conduct, "a manufacturer logically cannot be held liable for failing to exercise ordinary care when producing a product that is not defective.").

Under the facts alleged, the Court's dismissal of the defective manufacturing claim controls the disposition of Plaintiff's negligence claim. Thus, dismissal of the negligence claim is required.

\* \* \*

In sum, the Court will dismiss Plaintiff's manufacturing defect and negligence claims, leaving only the breach of implied warranty of merchantability claim.

## II.      Defendant's Partial Motion to Dismiss Wood's Complaint

As a reminder, Wood intervened in the case to recover losses that were not covered by the insurance policy with Plaintiff. Defendant seeks dismissal of his tort claims and certain damages he seeks. The motion will be granted as to the tort claims but not the damages.

***Negligence and Defective Manufacturing***. As to Wood's tort claims, Defendant argues that they fail for the same reasons as Plaintiff's tort claims. The Intervenor Complaint provides substantially the same allegations as the Complaint, and the differences do not alter the Court's analysis regarding defective manufacturing and negligence. Therefore, the Court will dismiss Wood's defective manufacturing and negligence claims for the reasons already explained.

***Damages***. Defendant argues that Wood cannot recover "expert fees and professional adjuster fees" because such "damages are not recoverable by law in Texas" (Dkt. #22 at p. 6). The Intervenor Complaint seeks "professional adjuster fee to assess value of dwelling contents," "professional adjuster fee to assess loss to dwelling," and "expert fee to determine actual cause of losses" (Dkt. #19 at p. 8).

In support of dismissal, Defendant cites *Frymire Eng'g Co., Inc. v. Grantham*, 517 S.W.2d 820, 828 (Tex. App.—Fort Worth 1974), *rev'd on other grounds*, 524 S.W.2d 680 (Tex. 1975), which

held that "[t]he measure of damages for repairable injury to a building is the amount necessary to restore the building to its condition immediately prior to its injury, and interest from the date of injury to the time of trial." Based on that holding, Defendant argues that the adjuster fees and expert fees are not recoverable because determining the cause of Wood's loss, as well as the value of personal property inside the dwelling and the dwelling itself, are not necessary to restore Wood's property to its condition prior to the injury.

But *Frymire* was a negligence case. *Id.* at 824. Here, Wood's only remaining claim is for breach of implied warranty of merchantability. The measure of damages for breach of warranty is: (1) the difference of value at the time and place of acceptance between the value of the goods as accepted and the value as warranted; (2) consequential damages, including lost profits; and (3) incidental damages, such as warehouse storage and fees. TEX. BUS. & COM. CODE § 2.714; *Forage Genetics Int'l, LLC v. Kelly Green Mexicana, Inc.*, No. 2:17-CV-243-D-BR, 2019 WL 3802021, at *4 (N.D. Tex. June 17, 2019), *report and recommendation adopted*, No. 2:17-CV-243-Z-BR, 2019 WL 5068583 (N.D. Tex. Oct. 9, 2019); *Berrocal v. Samsung Elecs. Co.*, No. 25-50259, 2025 WL 3488842, at *3 (5th Cir. Dec. 4, 2025) (per curiam) (unpublished) ("Texas law allows recovery for the diminished value of the good caused by the breach of warranty. Texas law also allows recovery of incidental and consequential damages in a proper case." (citation modified)). Texas law defines incidental and consequential damages in a warranty action as follows:

> (a) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

> (b) Consequential damages resulting from the seller's breach include

9

(1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(2) injury to person or property proximately resulting from any breach of warranty.

TEX. BUS. & COM. CODE § 2.715.

Here, Defendant's arguments focus squarely on whether Wood's damages were "necessary to restore the building to its condition immediately prior to its injury" under *Frymire*, without addressing whether the damages are recoverable on another basis. The Court takes no position on the viability of these damages, but it will not dismiss them without the benefit of briefing.[4]

\* \* \*

In sum, the Court will dismiss Plaintiff and Wood's negligence and defective manufacturing claims. Consequently, only their breach of implied warranty of merchantability claims remain. But the Court will not dismiss the challenged adjuster fees and expert fees under the arguments presented.

## CONCLUSION

It is therefore **ORDERED** that Techtronic Industries North America, Inc.'s Motion to Dismiss (Dkt. #15) is hereby **GRANTED**.

It is further **ORDERED** that Techtronic Industries North America, Inc.'s Partial Motion to Dismiss (Dkt. #22) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Plaintiff American Economy Insurance Company and Raegan Wood's defective manufacturing and negligence claims are hereby **DISMISSED**.

---

[4] The Court notes that Defendant has now filed a motion for summary judgment challenging the damages at issue, which includes other authorities besides *Frymire* (Dkt. #27). But that motion is not yet ripe.

10

**IT IS SO ORDERED.**

**SIGNED this 12th day of May, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE